IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Larry Durrance, ) | |
| ) | Civil Action No.2:11-cv-00368-JMC-BHH |
| Plaintiff, ) | |
| ) | |
| v. ) | **REPORT AND RECOMMENDATION** |
| ) | **OF MAGISTRATE JUDGE** |
| ) | |
| Lavern Cohen, Warden; Dr. Moore, ) | |
| Medical Director; Dr. Hammock, ) | |
| Resident M.D., Nurse Davis, RN Head ) | |
| Nurse; Nurse Canaday, LPN; and ) | |
| Nurse Simmons, LPN, ) | |
| ) | |
| Defendants. ) | |

The plaintiff, state prisoner proceeding pro se, brought this action pursuant to Title 42, United States Code, Section 1983. This matter is before the Court upon four motions: (a) Defendants' Motion to Dismiss (Dkt. No. 18); (b) Plaintiff's Motion for Summary Judgment (Dkt. No. 27); (c) Plaintiff's Motion "for Suppliment–New Evidence (Dkt. No. 54); and (d) Plaintiff's Second Motion "for Suppliment" (Dkt. No. 56).

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1) and Local Rule 73.02(B)(2)(e), D.S.C., all pretrial matters in cases involving *pro se* litigants are referred to a United States Magistrate for consideration.

The plaintiff brought this action on or about February 15, 2011. On March 31, 2011, Defendants filed a Motion to Dismiss (Dkt. No. 18). By order filed April 1, 2011, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), the plaintiff was advised of the dismissal procedure and the possible consequences if he failed to adequately respond to the motion. On or about April 29, 2011, Plaintiff's Motion for Summary Judgment, which was previously denied as premature, was re-filed. (Dkt. No. 27). Defendants filed their Response in Opposition to Plaintiff's Motion for Summary Judgment on May 17, 2011. (Dkt. No. 30.) In addition, Plaintiff filed a Response in Opposition to Defendants' Motion to

Dismiss on or about August 1, 2011. (Dkt. No. 48.) Plaintiff filed his first Motion "for Suppliment–New Evidence" on or about August 22, 2011. (Dkt. No. 54.) Plaintiff filed his Second Motion "for Suppliment" on September 29, 2011, to which Defendants filed a Response in Opposition. (Dkt. No. 56; Dkt. No. 57.)

## **PROCEDURAL FACTS**

Plaintiff, who is currently housed at MacDougal Correctional Institution, brings the instant action pursuant to 42 U.S.C. § 1983. Plaintiff alleges that the issues in the instant litigation are "deliberate indifference' to [his] medical needs, blocking [his] access to the Courts, denying [his] right to be able to worship and practice [his] religion, and hindering [his] right to due process. (Dkt. No. 1 at 2 of 11.) Plaintiff alleges that while "there is a prisoner grievance system in place," it "appears that the practice of ignoring grievances with merit go unanswered." (Id.) He states that he has "filed many grievances as well as grievance appeals," but has not "received any response from any of those." (Id.) He further alleges the he has "spoken with all defendants during sick-call and in passing, as well as Sgt. Braboy, Lt. Pinckney, and Major Eichelberger concerning the treatment, or lack of treatment thereof, and the break-down in the 'quasi' grievance system. Most always, the reply I got was 'file a grievance.'" (Id. at 3 of 11.)

In his "Claim 1," Plaintiff alleges that upon entering the South Carolina Department of Corrections ("SCDC") on April 15, 2010, his specially made and medically prescribed diabetic shoes were taken from him. (Id. at 4 of 11.) According to Plaintiff, he spoke with Dr. Steen three days after entering SCDC, and although Dr. Steen recommended that Plaintiff's shoes be returned, the shoes were not returned to Plaintiff. (Id.) Plaintiff states that on May 26, 2010, upon arriving at Ridgeland Correctional Institution, he "put in a request to medical about [his] condition (bad circulation in feet) and explained [his] situation about [his] special

shoes and need of them." (Id.) Plaintiff alleges that Nurse Davis told him that if he needed special diabetic shoes, SCDC would provide them, but "[n]othing happened." (Id. at 5 of 11.)

Plaintiff states that he spoke with Dr. Hammock about his need for diabetic shoes, and on June 1, 2010, Dr. Hammock told him that if he needed special diabetic shoes, SCDC would provide them. (Id.) Plaintiff alleges he "sent several requests to medical, but got no reply." (Id.) According to Plaintiff, he filed a grievance on June 18, 2010, and "put in for sick call." (Id.) Plaintiff alleges he again spoke with Dr. Hammock and Nurse Davis on June 20, 2010 "about [his] feet hurting and swelling up" and again asked for diabetic shoes, showing them letters from Plaintiff's doctors at the Veterans Administration "citing [his] need for the shoes." (Id.) Plaintiff asserts Dr. Hammock told him that Plaintiff is in prison and that "he (Dr. Hammock) would tell [Plaintiff] what he need[s], and what [his] care would be." (Id.) Plaintiff alleges that on July 7, 2010, he saw Nurse Simmons at the Diabetic Clinic. Plaintiff states that after he told her "about what had been going on," Nurse Simmons said Plaintiff was a "'nuisance to medical'" and told Plaintiff to "quit bothering the medical department about [his] feet and . . . [to] buy some sneakers from the prison canteen." (Id.) Plaintiff complains that he "suffer[s] from 'unnecessary and wanton infliction of pain,' and face[s] further serious risk of harm and/or injury due to denial of medical equipment (diabetic shoes) that would alleviate or improve [his] condition." (Id. at 6 of 11.)

In "Claim Two," Plaintiff asserts he has "been trying to see an optometrist so that [he] can get glasses to see correctly and to be able to read." (Id.) Plaintiff alleges that Nurse Simmons performed an eye exam on Plaintiff on November 20, 2010, in which Plaintiff "failed the exam." (Id.) Plaintiff states that Nurse Simmons told him that she would schedule an appointment for him to see an optometrist, but Plaintiff "never heard back from medical" and a "'request' was also not answered." (Id.) Plaintiff alleges he "signed up for sick-call, again, on or about" December 18, 2010, to "see about the eye appointment" and was told

3

that his appointment was subsequently denied. (Id.) Plaintiff contends that Nurse Canady told him that "due to <u>new</u> criteria within SCDC policy, [Plaintiff] would not qualify for an eye doctor appointment." (Id. at 7 of 11.) Plaintiff alleges that he told Nurse Canady that he cannot read or study the Bible and that he cannot "fully participate in a rehabilitative program designed for 're-entry back into society.'" (Id.) Plaintiff "basically expressed to Canady that [he] could not do much without the necessary prescription glasses." (Id.) He alleges that Nurse Canady told him, "You are not getting in to see an eye doctor due to new criteria, and you don't need to know what the criteria is." (Id.) Plaintiff states that he filed a grievance as soon as he got back to his dorm but that he never received a reply. (Id.)

Plaintiff asserts that although he never saw an optometrist, he was allowed to review his medical charts on December 24, 2010, and that even though he "do[es] not know where or how these results came to be since [he] had not seen an optometrist or specialist," even the results on his chart indicated the need for glasses. (Id. at 8 of 11.) Plaintiff states,

> [T]his amounts to <u>deliberate indifference</u>, denying my right to practice my religion, denying my right to rehabilitate myself, denying my right (6th Amend.) to redress government and participate in my legal proceedings, my right to be free from cruel and unusual punishment, and my right to due process.

(Id.)

Plaintiff prays for damages against Defendants in their individual and personal capacities. (Id. at 9-10 of 11.)

## DISCUSSION

As noted above, Defendants filed a Motion to Dismiss on March 31, 2011, stating that Plaintiff failed "to set forth facts sufficient to state causes of action upon which relief can be granted . . . as the Plaintiff has failed to exhaust his administrative remedies." (Dkt. No. 18 at 2.) Defendants attached the Affidavit of Ann Hallman, Inmate Grievance Administrator for Ridgeland and Kirkland Correctional Institutes, which they contend shows that Plaintiff

4

"has wholly failed to exhaust, even at the institutional level, his administrative remedies." (Id.) Defendants note that while Plaintiff "states that he did not receive any written responses from his grievances," the Affidavit of Ms. Hallman shows that Plaintiff's "grievances are currently being processed at the institutional level and, consequently, [Plaintiff] has not exhausted the administrative remedies available to him." (Id.) In her Affidavit, Ms. Hallman states, "The Plaintiff has filed only two grievances with respect to diabetic shoes and eyeglasses, and both were filed on 1/18/11." (Dkt. No. 18-1 at 1.) Defendants contend dismissal is appropriate pursuant to the Prison Litigation Reform Act ("PLRA"). See 42 U.S.C. § 1997e(a).

Plaintiff filed a Motion for Summary Judgment on April 29, 2011. (See Dkt. No. 27.) In his motion, Plaintiff asserts that the Defendants "are aware of his problems" but have "denied his use of special prosthetic shoes." (Dkt. No. 27 at 1.) He also contends that "[p]rison officials are aware of hi failing eyesight[] yet. . . have refused to afford him the opportunity to have his vision corrected with glasses." (Id. at 2.) Plaintiff states the Defendants not only knew that their actions violated Plaintiff's constitutional rights but that they "acted with malice, indifference, and hatred" towards Plaintiff. (Id.) Plaintiff states,

> If an official knows, or should know that certain treatment is necessary and delays in providing treatment, knowing that delay or refusal can be hazardous, or causing further risk or further harm or unnecessary pain and suffering, his actions could be deliberate indifference.
> Plaintiff has demonstrated that the . . . [Defendants] have all acted with callous and deliberate indifference to his medical needs.

(Id. at 4.) In responding to this motion, Defendants assert the motion should be denied for all the reasons set forth in the undersigned's previous Report and Recommendation dated March 17, 2011 (adopted by the Honorable Michelle Childs on April 29, 2011). (Dkt. No. 30 at 1.) Defendants contend Plaintiff's Motion for Summary Judgment is "premature due to the

5

fact that the Defendants have not engaged in discovery or even filed an Answer at this point in time." (Id.)[1]

Plaintiff filed his Response in Opposition to the Motion to Dismiss on or about August 1, 2011. (See Dkt. No. 48.) Plaintiff's Response states that he "certif[ies], swear[s], or affirm[s] that the following is true and correct . . . under the penalty of purgury [sic] and Title 28 Sec. 1746." (Id. at 1.) He again asserts that Defendants have been and continue to be deliberately indifferent to his "most serious medical problems" by failing to provide him with diabetic shoes and eye exams. (Id. at 2 of 7.) He does not address the Defendants' argument about failure to exhaust but does present two letters as attachments. (See Dkt. No. 48-1.)[2] One letter is purportedly from Dr. Del Rosario at the Ralph H. Johnson VA Medical Center; in this letter signed April 21, 2011, Dr. Del Rosario states that Plaintiff "is a known diabetic and does require the shoes that [the VA] provided to him." (Dkt. No. 48-1 at 2 of 7.) A second undated letter is purportedly from Dr. Soule also at the Ralph H. Johnson Medical Center; Dr. Soule stated,

> Mr. Durrance should be given access to his therapeutic shoes or . . . substitute. Additionally, he should receive routine eye exams for eye disease. The Veterans Administration recommends formal ophthalmologic exams at least every two years in patients with diabetes, more often if there is a finding of retinopathy.

(Id. at 3 of 7.) Plaintiff further complains in his Response in Opposition of other alleged inadequate health care. (See Dkt. No. 48-1 at 1 of 7.)

---

[1] Defendants filed their Response in Opposition to Plaintiff's Motion for Summary Judgment on May 17, 2011. (See Dkt. No. 30.) As of the date of this Order, no Answer has been filed on behalf of Defendants.

[2] In their Reply, Defendants contend the Motion to Dismiss should be granted because Plaintiff failed to provide the Court "with any evidence concerning the exhaustion of administrative remedies." (Dkt. No. 53 at 2.)

6

On or about August 22, 2011, Plaintiff filed a Motion "for Suppliment," (Dkt. No. 54), wherein he contends that his Sixth and Fourteenth Amendment rights have been violated because his requests for appointment of counsel have been denied. (Dkt. No. 54 at 2 of 4.) Plaintiff states the attached documents, which "come directly out of Plaintiff's S.C.D.C. medical files," reveal the "intentional denying or delaying access to medical care and/or medical equipment: i.e. 'diabetic shoes' . . ." (Id.) Plaintiff again attaches the letters from Dr. Del Rosario and Dr. Soule. (Dkt. No. 54-1.)

Attached to his Motion "for Suppliment" are three Requests to Staff. In the one dated March 3, 2011, Plaintiff complains that his diabetic shoes were taken and that he has "written to everyone [he] know[s] to try to keep from losing [his] foot." (Dkt. No. 54-1.) He also complains that he needs an eye exam at least every two years. (Id.) The "Disposition," dated April 6, 2011, indicates that Plaintiff's request for an eye appointment was approved. (Id.) Another Request to Staff reveals that on April 15, 2011, Plaintiff asked if he would be able to see an eye doctor. (Dkt. No. 54-1 at 4 of 10.) The "Disposition" states,

> We do not have approval for this. The procedure is that you sign up for sick call requesting an eye exam and tell the nurse what your concerns are, an eye exam will be done and a request for an eye appointment made. I do not see where you have completed this procedure. Please do so so we can address your concern.

(Id.) Finally, a Request to Staff Member dated January 18, 2011, states that Plaintiff: (a) requests an appointment with a podiatrist "as soon as possible" because Plaintiff is "worried about losing [his] left foot to diabetes" and (b) requests an appointment with an endocrinologist "about [his] diabetes." (Dkt. No. 54-1 at 5 of 10.) The Disposition section states, "You may sign up for sick call to address your concerns." (Id.)

Plaintiff also attaches "Physician's Orders" from the "SCDC Offender Management System," indicating that on April 14, 2010, Dr. Steen indicated that Plaintiff "needs diabetic

7

shoes." (Dkt. No. 54-1 at 7 of 10.) Defendants did not file a Response to Plaintiff's Motion "for Suppliment."

Plaintiff filed his Second Motion "for Suppliment" on or about September 29, 2011. (Dkt. No. 56.) In this motion, Plaintiff seeks to show that he "has been wrongfully [i]ncarcerated." (Dkt. No. 56 at 1 of 4.) Though this request appears to be a petition pursuant to 28 U.S.C. § 2254 masquerading as a motion in his § 1983 action, Plaintiff does seek an order that he be "immediately released from custody for purpose of seeking proper medical care for his most serious medical needs due to Defendants' deliberate indifference to Plaintiff's health care." (Id. at 3 of 4.)

Defendants did file a Response in Opposition to the Second Motion "for Suppliment," again stating that "[t]o date, the Plaintiff has yet to provide any evidence of, or even allege[], the exhaustion of administrative remedies." (Dkt. No. 57.)

## **APPLICABLE LAW**

**Summary Judgment Motion Standard**[3]

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "Facts are 'material' when they might affect the outcome of the case, and a 'genuine issue' exists when the evidence would allow a reasonable jury to return a verdict for the nonmoving party." The News & Observer Publ'g Co. v. Raleigh-Durham Airport Auth., 597

---

[3]Although Defendants filed a Motion to Dismiss, the undersigned recommends treating the motion as a Motion for Summary Judgment because exhaustion cannot be thoroughly examined from Plaintiff's Complaint alone. Furthermore, while the undersigned recommends dismissing Plaintiff's Motion "for Suppliment" (Dkt. No. 54), Second Motion "for Suppliment" (Dkt. No. 56), and Motion for Summary Judgment (Dkt. No. 27) as moot, the undersigned has considered Plaintiff's motions in recommending a ruling on Defendants' Motion to Dismiss.

8

F.3d 570, 576 (4th Cir. 2010) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). In ruling on a motion for summary judgment, "'the nonmoving party's evidence is to be believed, and all justifiable inferences are to be drawn in that party's favor.'" Id. (quoting Hunt v. Cromartie, 526 U.S. 541, 552 (1999)); see also Perini Corp. v. Perini Constr., Inc., 915 F.2d 121, 123-24 (4th Cir. 1990).

## DISCUSSION

The PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Through the enactment of this statute, "Congress has mandated exhaustion clearly enough, regardless of the relief offered through administrative procedures." Booth v. Churner, 532 U.S. 731, 741 (2001); see Porter v. Nussle, 534 U.S. 516 (2002); Larkin v. Galloway, 266 F.3d 718 (7th Cir. 2001) (exhaustion required even though the plaintiff claimed he was afraid); see also Claybrooks v. Newsome, 18 Fed. App'x 243 (4th Cir. Sept. 18, 2001) (applying Booth v. Churner to affirm the district court's denial of relief to the plaintiff).

The evidence in the record shows there is no genuine issue of material fact as to whether Plaintiff exhausted his administrative remedies *prior* to filing suit. Defendants presented the Affidavit of Ms. Hallman, wherein she stated that Plaintiff "has filed only two grievances with respect to diabetic shoes and eyeglasses, and both were filed on 1/18/11." (Dkt. No. 18-1 at 1.) She states that as of the date of her Affidavit, or March 30, 2011, the Plaintiff's two grievances were still pending at the institutional level. (Id. at 2.) Ms. Hallman further described the administrative process for grievances:

> 6. [O]nce Plaintiff receives IGC response, if he disagrees with the response, there is an appeal process wherein Plaintiff can appeal to the Warden.

9

> 7. [O]nce Plaintiff receives the Warden's response, if he disagrees with the response, Plaintiff has five (5) days to file a Step 2 appeal to Central Office to get an Agency response from the appropriate responsible official.
>
> 8. [O]nce Plaintiff receives the Agency final response, if he disagrees with the response, he will have thirty (30) days to file with the Administrative Law Court (ALC).

(Dkt. No. 18-1.)

Plaintiff's Complaint was docketed on February 15, 2011, and is dated January 29, 2011. (See Dkt. No. 1 at 2 of 11.) Along with his Complaint is (a) a Request to Staff Member stamped "received" "Dec 07" wherein Plaintiff complains about the lack of diabetic shoes; (b) a Request to Staff Member with an illegible date wherein Plaintiff complains about lack of glasses; (c) a letter from Dr. Davis-Seagle dated October 26, 2010, wherein she states that Plaintiff "has required and benefitted from diabetic shoes in the past" and is "in need of another set of footwear"; (d) a letter from Dr. Soule stating that Plaintiff "should be given access to his therapeutic shoes or suitable substitute" and that Plaintiff "should receive routine eye exams for his eye disease"; and (e) an undated letter appearing to be from the VA providing that Plaintiff "is a known diabetic and does require the shoes that [the VA] provided to him." (See generally Compl.)

While it appears from the attachments to Plaintiff's Complaint that he may have sent Requests to Staff Members prior to filing the instant action, Plaintiff presents no evidence to contradict Defendants' evidence that Plaintiff's only grievances with respect to diabetic shoes and eyeglasses were filed on January 18, 2011, and that both were still pending at the institutional level at the time Plaintiff filed his Complaint. See, e.g., Barnes v. Wilson, No. 3:10-1474-TLW-JRM, 2010 WL 5652764, at *1 (D.S.C. Nov. 30, 2010), adopted at 2011 WL 291183 (D.S.C. Jan. 26, 2011) ("An SCDC inmate must make an attempt to informally resolve his complaint by submitting a request to staff member form or by discussing the complaint with the appropriate supervisor. If the inmate is not able to resolve his complaint

informally, he can complete a Step 1 grievance form and submit it to the institutional Inmate Grievance Coordinator ('IGC')."); Penza v. Patterson, No. 8:10-cv-2361-JFA-JDA, 2011 WL 5869748, at *6 (D.S.C. Oct. 26, 2011), adopted at 2011 WL 5875001 (D.S.C. Nov. 21, 2011) ("Courts within the District of South Carolina have found an inmate exhausts his administrative remedies when he completes Step 2 of the SCDC Grievance Procedure . . . . Hence, within this District, an inmate's claim is barred unless he completes Step 2 of the SCDC grievance procedure with respect to that claim."). Furthermore, a plaintiff is not permitted to exhaust his administrative remedies while his lawsuit is pending; the PLRA requires administrative remedies to be exhausted prior to filing suit. See Cannon v. Washington, 418 F.3d 714, 719 (7th Cir. 2005) (prisoner may not file a lawsuit before exhausting his administrative remedies, even if he exhausts those remedies while the litigation is pending); Freeman v. Francis, 196 F.3d 641, 645 (6th Cir. 1999) ("The prisoner ... may not exhaust administrative remedies during the pendency of the federal suit."); Grier v. Mitchell, No. 9:11-0042-TMC, 2011 WL 5517242, at *1 (D.S.C. Nov. 1, 2011) ("[E]xhaustion is a precondition to filing suit in federal court." (citing Moore v. Bennette, 517 F.3d 717, 725 (4th Cir. 2008))); Johnson v. Ozmint, 567 F. Supp. 2d 806, 815 (D.S.C. 2008).

The undersigned notes Plaintiff alleges that although "there is a prisoner grievance system in place," it "appears that the practice of ignoring grievances with merit go unanswered." (Dkt. No. 1 at 2 of 11.) Plaintiff alleges in his Complaint that he has "filed many grievances as well as grievance appeals," but has not "received any response from any of those." (Id.) "[A]n administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it." Moore, 517 F.3d at 725. "[W]hen prison officials prevent inmates from using the administrative process . . . , the process that exists on paper becomes unavailable in reality." Zander v.

11

Lappin, 415 Fed. App'x 491, 492 (4th Cir. Mar. 10, 2011) (quoting Kaba v. Stepp, 458 F.3d 678, 684 (7th Cir. 2006)). The district court is "obligated to ensure that any defects in exhaustion were not procured from the action or inaction of prison officials." Id. (quoting Aquilar-Avellaveda v. Terrell, 478 F.3d 1223, 1225 (10th Cir. 2007)).

In the instant case, Plaintiff has made the bald assertion that grievances go unanswered. The Requests to Staff attached to Plaintiff's Complaint–presumably to support his assertion that administrative remedies are "unavailable" to him–do not support Plaintiff's theory. Those documents are not grievances but are instead Requests to Staff, and those documents *do* contain answers from prison officials, albeit answers different from ones that Plaintiff may have preferred. The instant case is simply not one where Plaintiff has been prevented from availing himself of administrative remedies. Accordingly, given the undisputed evidence that Plaintiff's relevant grievances were pending at the institutional level at the time the instant action was filed, the undersigned recommends that Defendants' Motion to Dismiss (Dkt. No. 18) be treated as a Motion for Summary Judgment and be granted, and that all other pending motions be dismissed as moot. See Mack v. Drew, C/A No. 9:09-2891-JFA-BM, 2011 WL 765565, at *3 (D.S.C. Feb. 24, 2011) ("The plaintiff also argues that the numerous letters he wrote to BOP staff concerning his problems with access to the law libraries show that he went to extreme measures to exhaust his administrative remedies. However, plaintiff failed to fully complete each level of the process, thereby failing to properly exhaust his administrative remedies."); Williams v. Torres, No. 9:07-0146-MBS, 2008 WL 525457, at *2 (D.S.C. Feb. 25, 2008) ("Plaintiff's allegation that CCDC officials destroy inmate grievances is not supported by the record. Plaintiff has failed to allege any specific instances where CCDC officials failed to respond to a properly filed grievance. Plaintiff's bald assertion that he filed 'numerous' unanswered grievances is insufficient to defeat summary judgment on the issue of whether he has exhausted his administrative

12

remedies. Furthermore, accepting as true Plaintiff's claim that his telephone grievance did allege the same facts alleged in his complaint, he still has failed to exhaust his administrative remedies by not pursuing the claim beyond the initial stage. Under the PLRA, exhaustion requires that an inmate complete all steps of the administrative process available to him, including pursuing the appropriate appellate review.").

## CONCLUSION

Wherefore, it is RECOMMENDED that the Defendants' Motion to Dismiss (Dkt. No. 18) be treated as a Motion for Summary Judgment and be GRANTED. It is further RECOMMENDED that all other pending motions be DISMISSED as moot.

IT IS SO RECOMMENDED.

s/Bruce Howe Hendricks
United States Magistrate Judge

November 30, 2011
Charleston, South Carolina

**The plaintiff's attention is directed to the important notice on the next page.**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> Post Office Box 835
> Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).